# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>JIMMY SLOAN,<br><br>                    Defendant. | Case No. 90-CR-42-15-JPS<br><br>**ORDER** |

1. **BACKGROUND**

On November 25, 2020, Defendant, through his counsel, filed a motion for compassionate release. (Docket #604). That same day, the Government stated that it would not be filing a brief in opposition to Defendant's motion. (Docket #607). Having reviewed both parties' submissions, the Court grants Defendant's motion for compassionate release and reduces Defendant's term of imprisonment to time served.

2. **FACTS**

Defendant has been in federal custody since March of 1990. (Docket #604 at 1). He was charged and ultimately convicted following a jury trial of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and carrying a firearm in relation to a drug trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 942(c), as well as 18 U.S.C. § 2. (Docket #604-1 at 1). Ultimately, this Court sentenced Defendant to a term of 480 months of imprisonment and 5 years of

supervised release. (*Id.* at 2–3).[1] At present, Defendant has served approximately thirty years of his sentence and his estimated release date is April 3, 2028. (Docket #604 at 3).

Defendant is currently 55 years old and presents multiple adverse health conditions. (*Id.* at 1). He had a stroke this past year that has left him with cognitive deficiencies, blind in one eye, and wheelchair bound. (*Id.* at 4). He also has Type II diabetes, obesity, hypertension, atrial fibrillation, hyperlipidemia, and epilepsy. (*Id.*) Defendant's counsel notes that as a result of Defendant's stroke, Defendant requires more access to medical services than other inmates. (*Id.*) This, in turn, causes Defendant to come in contact with others more regularly, and such contacts create additional risks during the ongoing COVID-19 pandemic. (*Id.*)

3. **LEGAL STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court can modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . whichever is earlier" if "extraordinary and compelling reasons warrant such a reduction[.]" The reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id*. § 3582(c)(1)(A). The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when:

---

[1] Defendant, along with his co-defendants, appealed and the Court of Appeals vacated his sentence and remanded his case for resentencing. *See United States v. Goines*, 988 F.2d 750, 777 (7th Cir. 1993). After reviewing the record, per the Seventh Circuit's instructions, this Court imposed a sentence identical to its original sentence in Defendant's case. (Docket #604-1 at 2).

> the defendant is suffering from a serious physical or medical condition, [or] suffering from a serious functional or cognitive impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)–(II).

The Sentencing Guidelines' policy statement also requires that the Court determine whether "the defendant is not a danger" to others or the community as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2). Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. *Id.* § 1B1.13. Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4. ANALYSIS

Because the Bureau of Prisons has not filed a motion on Defendant's behalf, he must first have exhausted his administrative remedies. It appears that Defendant sought to file a motion for an administrative remedy with the Bureau of Prisons at some point in September 2020. (*See* Docket #604-2). Defendant's counsel was unable to confirm that this motion actually made it to the warden. (Docket #604 at 7). Assuming that the warden actually received the motion, thirty days have certainly passed since the end of September 2020. For good measure, Defense counsel has since filed a

motion on Defendant's behalf. (*Id.*) Even if Defendant clearly failed to exhaust his administrative remedies, the Government has effectively waived any such argument by way of its submission. (*See* Docket #607). Lastly, courts in this very district have held that the exhaustion requirement under § 3582 is non-jurisdictional and, thus, a court may waive it. *See, e.g., United States v. Scott*, 461 F. Supp. 3d 851, 857–60 (E.D. Wis. 2020). Therefore, the lack of clarity regarding whether Defendant has exhausted his remedies is not an obstacle to the Court granting his motion for compassionate release.

Next, the Court determines whether Defendant has presented extraordinary and compelling reasons warranting his release. As a result of his stroke, Defendant is suffering from both serious physical conditions and cognitive impairments that substantially diminish his ability to care for himself. Such circumstances likely establish an extraordinary and compelling reason in favor of Defendant's compassionate release. *See United States v. Mack*, Case No. 3:13-cr-206, 2020 WL 6044560, at *5 (M.D. Fla. Oct. 13, 2020) (finding that a defendant who had suffered multiple strokes established an extraordinary and compelling reason for his release, in part, because his stroke-related physical and cognitive impairments impeded his ability to care for and protect himself from COVID-19 in the prison environment); *United States v. Jenkins*, 460 F. Supp. 3d 1121, 1129 (D. Colo. May 8, 2020) (citations omitted) (explaining that strokes are now being linked to COVID-19 and that persons who have suffered strokes "are more likely to require hospitalization" after contracting the virus).

Defendant also has several other conditions, such as Type II diabetes, obesity, and hypertension, that place him at an increased risk of severe illness and death from COVID-19. *See* Coronavirus Disease 2019 (COVID-

19): People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 30, 2020). This Court has previously held that the outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at high risk should he or she contract the disease, establish an extraordinary reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). Between both Defendant's underlying conditions that place him at a higher risk of severe illness if he falls ill with COVID-19, and the physical and mental deterioration that he has and will continue to experience as the result of his stroke, the Court finds that Defendant has shown extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

Finally, the Court will consider the factors laid out in 18 U.S.C. § 3553(a) and whether Defendant's release presents a danger to others or the community in light of 18 U.S.C. § 3142(g). Notably, Defendant has served over half of his term of imprisonment. The Court finds that Defendant's nearly thirty-one years in prison reflect the seriousness of his offense, adequately deter him from future criminal conduct, and protect the public. As Defendant's counsel points out, Defendant's fragile physical and mental state makes further rehabilitation unlikely. However, in light of Defendant's conditions, his release is less likely to present a danger to others or the community. It is also promising that Defendant and his family have already developed a plan for his care, housing, and expenses should he be released. (Docket #604 at 12). Lastly, the Court finds it telling that the Government has not filed a brief in opposition to Defendant's motion for compassionate release. In light of the foregoing, the Court will grant

Defendant's motion for compassionate release. Defendant's sentence shall be reduced to time served and he shall serve two years of supervised release.[2]

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #604), filed by Federal Defender Services of Wisconsin, be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal (Docket #605) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Appoint Counsel (Docket #601) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Jimmy Sloan's term of imprisonment is reduced to time served; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to immediately release Defendant Jimmy Sloan from incarceration pursuant to the amended judgment, which follows.

Dated at Milwaukee, Wisconsin, this 2nd day of December, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[2]In its forthcoming amended judgment, the Court updates Defendant's conditions of supervised release, as written in the Court's March 24, 1995 judgment, to comport with current Seventh Circuit case law. The Court also modifies some conditions of release in light of Defendant's current circumstances.